# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BUFFALO FIELD CAMPAIGN, <br><br> WESTERN WATERSHEDS PROJECT, <br><br> and <br><br> FRIENDS OF ANIMALS, <br><br>       Plaintiffs, <br><br> v. <br><br> RYAN ZINKE, in his official capacity as Secretary of the Interior, <br><br> JIM KURTH, in his official capacity as Acting Director of the U.S. Fish and Wildlife Service, <br><br> and <br><br> U.S. FISH AND WILDLIFE SERVICE, an agency of the United States, <br><br> Defendants. | Case No. 1:16-cv-1909-CRC <br><br><br><br> **PLAINTIFFS' MOTION FOR REASONABLE ATTORNEYS' FEES** <br> (EQUAL ACCESS TO JUSTICE ACT) |

Pursuant to Local Civil Rule 54.2(a), Federal Rule of Civil Procedure 54(d), and the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, Buffalo Field Campaign, Western Watersheds Project, and Friends of Animals (collectively "Plaintiffs"), respectfully move this Court to award attorneys' fees from the federal Defendants.

Plaintiffs seek the following fees to date: $143,464.36.

This motion is based on the memorandum in support of this motion and supporting documents, filed concurrently,[1] as well as any reply filed subsequently.

---

[1] Plaintiffs reserve the right to supplement this motion with additional materials in support, including supplemental schedules for hours expended on fee recovery. *See, e.g. Singleton v. Apfel*, 231 F.2d 853, 858 (11th Cir. 2000) (permitting supplementation);

Dated:  July 27, 2018                    Respectfully Submitted,


                                          /s/ Michael Harris
                                          Michael Ray Harris
                                          Director, Wildlife Law Program
                                          Friends of Animals
                                          7500 E. Arapahoe Road, Suite 385
                                          Centennial, Colorado 80112
                                          michaelharris@friendsofanimals.org
                                          720-949-7791

                                          *Attorney for Plaintiffs*

---

*Scarborough v. Principi*, 541 U.S. 401 (2004) (substantially complete EAJA application satisfies timeliness requirements).

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BUFFALO FIELD CAMPAIGN, <br><br> WESTERN WATERSHEDS PROJECT, <br><br> and <br><br> FRIENDS OF ANIMALS, <br><br>　　　　Plaintiffs, <br><br> v. <br><br> RYAN ZINKE, in his official capacity as Secretary of the Interior, <br><br> JIM KURTH, in his official capacity as Acting Director of the U.S. Fish and Wildlife Service, <br><br> and <br><br> U.S. FISH AND WILDLIFE SERVICE, an agency of the United States, <br><br>　　　　Defendants. | Case No. 1:16-cv-1909-CRC <br><br><br> **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR REASONABLE ATTORNEYS' FEES (EQUAL ACCESS TO JUSTICE ACT)** |

Buffalo Field Campaign, Western Watersheds Project, and Friends of Animals (collectively "Plaintiffs") come now, pursuant to Local Civil Rule 54.2(a), Federal Rule of Civil Procedure 54(d), and the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, seeking reasonable attorneys' fees as compensation from the federal Defendants for Plaintiffs' success on the merits in this litigation. EAJA provides, in relevant part, that the Court may "award to a prevailing party other than the United States fees and other expenses" in any non-tort civil action "including proceedings for judicial review of agency action, brought . . . against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. §

2412(d)(1)(A). Here, Plaintiffs are eligible to obtain fees under EAJA because: (1) the motion is timely, (2) Plaintiffs are eligible under EAJA for recovering fees and costs, (3) Plaintiffs are the prevailing party, and (4) Defendants' position in this case was not substantially justified. Further, Plaintiffs' fee request is reasonable because its attorneys' rates are reasonable and Plaintiffs only seek to recover for the hours reasonably expended on the litigation to achieve the successful result.[1]

### A. Plaintiffs' Application Motion is Timely.

EAJA requires that a motion for "fees and other expenses" be filed "within thirty days of final judgment on the action." 28 U.S.C. § 2412(d)(1)(B). A "final judgment" is one that is "not appealable." *Id.* § 2412(d)(2)(G). The Court entered judgment on January 31, 2018. *See* Order (ECF No. 26). Defendants had a 60-day period for appeal following the Court's ruling, and Defendants timely appealed on April 2, 2018 (Case No. 18-5087). *See* Fed. R. App. P. 4(a)(1)(B)(ii), (iii) (allowing sixty days after entry of judgment for a party to appeal when one of the parties is a federal agency or a federal officer sued in an official capacity). More than two months later, Defendants moved to voluntarily dismiss the appeal, and the appellate court issued its order and mandate granting the dismissal on June 27, 2018. *See* Case No. 18-5087, ECF No. 1738001 (Order), ECF No. 1738002 (Mandate). Thus, any motion for attorneys' fees and expenses under EAJA became due by July 27, 2018. As a result, this motion is timely.

### B. Plaintiffs are Eligible to Receive an EAJA Award.

Plaintiffs are eligible for an award of fees under EAJA because they are nonprofit organizations which did not have more than 500 employees at the time the civil action was

---

[1] Plaintiffs conferred with counsel for Federal Defendants by email regarding this motion. Plaintiffs' presented the government with a proposed settlement to their fee claim on July 17, 2018, and supplemented it on July 24, 2018. The government is taking the settlement under consideration but has not had sufficient time to review and respond before this motion is due under EAJA.

filed. Plaintiffs' organizations are registered under section 501(c)(3) of the Internal Revenue Code and exempt from taxation under section 501(a). *See* 28 U.S.C. § 2412(d)(2); Decl. of Michael R Harris in Support of Plaintiffs' Motion for Reasonable Attorneys' Fees ("Harris Decl.") at ¶ 15-17. As such, Plaintiffs qualify as eligible to receive an award of fees under EAJA.

### C. Plaintiffs are the Prevailing Party.

Plaintiffs are the prevailing party under EAJA because the Court granted their motion for summary judgment, denied the Defendants' cross-motion, and remanded the U.S. Fish and Wildlife Service's (FWS) negative 90-day finding on Plaintiffs' petition to list the Yellowstone bison population back to the agency to conduct a new 90-day finding using the proper standard. *Buffalo Field Campaign v. Zinke*, 289 F. Supp. 3d 103, 111 (D.D.C. 2018). The Court found that "by resolving an outstanding scientific dispute, the Service applied an improperly heightened standard in making its 90-day determination," thus rendering its decision arbitrary and capricious and entitling Plaintiffs to summary judgment in their favor. *Id.* at *111. Thus, the Court remanded the 90-day finding back to the agency to conduct a new analysis under the proper evidentiary standard. *See also Kean v. FEC*, 2006 U.S. Dist. LEXIS 2563, *10-11 (D.D.C. Jan. 13, 2006) (finding that "[t]he fact that the Court did not attach a vacatur of the agency's prior decision to the remand is of no consequence" to the prevailing party inquiry).

### D. Defendants' Position was Not Substantially Justified

"Once an applicant's status as a prevailing party is established, the government has the burden of showing that its legal position was substantially justified or that special circumstances make an award unjust." *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1173 (D.C. Cir. 2005) (citation omitted). If the government cannot make such a showing, the award of EAJA fees to an eligible prevailing party is mandatory. *See SecurityPoint Holdings, Inc. v.*

*Transp. Security Admin.*, 836 F.3d 32, 39 (D.C. Cir. 2016). "The government's position is substantially justified if it is 'justified to a degree that could satisfy a reasonable person' or, in other words, has 'a reasonable basis both in law and fact.'" *Taucher*, 396 F.3d at 1173 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). The agency must show "both" that (1) the "underlying agency action" and (2) "the arguments defending that action in court" satisfy that standard. *See Halverson v. Slater*, 206 F.3d 1205, 1208, 340 U.S. App. D.C. 413 (D.C. Cir. 2000). As an initial matter, the United States' position is not substantially justified where "the government's position violates the Constitution, a statute, or its own regulations," unless the regulation it violated was "ambiguous, complex, or required exceptional analysis." *Meinhold v. United States Dep't of Def.*, 123 F.3d 1275, 1278 (9th Cir. 1997) (amended at 1997 U.S. App. LEXIS 35603). Here, there is little doubt that in making the negative 90-day finding for the Yellowstone bison, Federal Defendants plainly violated the rather straightforward requirements of Section 4 of the ESA as well as their own interpretative regulations.

Indeed, the Court had little difficulty finding that FWS violated ESA's regulatory provision regarding what standard to apply at the 90-day finding stage of reviewing an ESA listing petition. *Buffalo Field Campaign v. Zinke*, 289 F. Supp. 3d at 111. At issue in the case was the handling of various scientific studies cited to in the petition and contained in the administrative record. Under the ESA and applicable FWS regulations, and as interpreted by the Courts, such studies are to be taken at face value for purposes of a 90-day finding unless FWS determines them to be obsolete, wholly unreliable, or irrelevant.  *See Humane Soc'y of the U.S. v. Pritzker*, 75 F. Supp. 3d 1, 14 (D.D.C. 2014); *Ctr. for Biological Diversity v. Morgenweck*, 351 F. Supp. 2d 1137, 1142 (D. Colo. 2004). Moreover, where there is conflict in otherwise relevant scientific studies, FWS is obligated to read them in the light most favorable to the petitioned action, leaving resolution of the conflict for the 12-month review. *See Pritzker*, 75 F. Supp. 3d at 14; *cf. Morgenweck*, 351 F. Supp. 2d at 1142.

This standard is not ambiguous or complex, nor did it require exceptional analysis. To the contrary, at the hearing, FWS "did not contest" the regulatory standard that "where there is disagreement among reasonable scientists, [FWS] should make the 'may be warranted' finding." *Id.* at 109-110. This case presented a "relatively straightforward example of such a scientific dispute." *Id.* at 111. However, rather than properly addressing this straightforward dispute, FWS applied the wrong legal standard to find that listing is not warranted. *Id.*

Here, a reasonable person would not be satisfied that Defendants' position is substantially justified because, as the Court found, "by resolving an outstanding scientific dispute, the [FWS] applied an improperly heightened standard," above that allowed by the ESA, in making its 90-day determination. *Buffalo Field Campaign v. Zinke*, 289 F. Supp. 3d at 111. Not only was there no reasonable basis for FWS's actions, Defendants' arguments defending these actions also had no reasonable basis in fact or law. Defendants did not provide a convincing statement justifying its finding that listing was not warranted in light of the straightforward scientific dispute. To the contrary, Defendants "offered no explanation" for relying on one study over another. *Id.* at 110. The arguments in Defendants' brief further demonstrated that the FWS used the wrong legal standard as FWS "appear[ed] to have taken it upon itself to repave disagreement among reasonable experts." *Id.* (citing Fed. Defs.' Cross-Mot. Summ. J. at 27-28, Fed. Defs.' Reply Supp. Cross-Mot. Summ. J., at 14-19).

FWS never provided a reasoned explanation to defend its use of the improperly and illegal heightened standard. Indeed, at oral argument, when asked to identify where in the record FWS had made a determination that the relevant scientific reports relied upon in the petition were determined to be "obsolete, wholly unreliable, or irrelevant," counsel for the government was unable to provide any citation whatsoever. *See, e.g.*, Harris Decl. at ¶ 27. As such, the Court had no real choice but to find that FWS "simply picked a side in an

ongoing debate in the scientific community, which is improper at the 90- day finding stage." *Id.* at 111. Thus, the agency's action, and its argument defending its action, were not substantially justified. *See Taucher*, 396 F.3d at 1173; *Halverson,* 206 F.3d at 1208.

Additionally, Defendants argued at the hearing that "by not allowing [FWS] to resolve scientific discrepancies or disputes, the Court will collapse any distinction between the 90-day finding and the 12-month review." *Id.* at 111. The Court found this concern to be "overstated" because the Court was not requiring FWS "to accept any and all positions that a petition advances. Nor [wa]s it requiring [FWS] to credit scientific studies it knows to be obsolete, wholly unreliable, or irrelevant." *Id.* at 111. The Court explained that FWS "simply cannot resolve outstanding disputes between reasonable scientists over relevant matters in the course of a 90-day review." *Id.* Because it did so in this case, its decision was arbitrary and capricious. *Id.* Once again, Defendants' arguments defending the agency's action did not have a reasonable basis in either law or fact.

Neither the underlying agency action here, nor Defendants' arguments to the Court defending FWS's 90-day finding, had a reasonable basis in both law and fact. Nor can the agency show that special circumstances make an award unjust. Therefore, Defendants' legal position was not substantially justified. *See Taucher*, 396 F.3d at 1173; *Halverson,* 206 F.3d at 1208. Because Defendants cannot show that its actions can be justified to a degree that would satisfy a reasonable person, the award of EAJA fees to Plaintiffs is mandatory. *See SecurityPoint Holdings, Inc.*, 836 F.3d at 39.

### E.  Plaintiffs' Fee Request is Reasonable.

Accordingly, Plaintiffs claim $ 143,464.36 in attorneys' and paralegal's fees. Fees are requested for 127.25 hours of work performed by Mr. Michael R. Harris; 29.0 hours by Ms. Jennifer Best; 47.3 hours by Ms. Andrea Gelfuso; 53.2 hours by Mr. Paul Ruprecht; 371.85 hours by Ms. Elizabeth Rasheed, all of whom are licensed attorneys, and 149.3 hours of work by Mr. Darrell Geist, a paralegal. *See* Exhibit G to Harris Decl. The fee requested for

each attorney here is reasonable in both the number of hours expended and the hourly rate of compensation requested, as explained in further detail below.

Plaintiffs' claim for reasonable attorneys' fees is properly based on the "lodestar" formula, which is the number of hours reasonably expended multiplied by a reasonable hourly rate. *See City of Burlington v. Dague*, 505 U.S. 557, 559-60 (1992). There is a "strong presumption" that the "lodestar" amount represents a "reasonable fee." *Id.* at 561. This is especially true in cases involving the vindication of the public interest, such as this case. *City of Riverside v. Rivera*, 477 U.S. 561, 572 (1985) (holding that all requested fees should be awarded even though plaintiff was not successful on every claim).

### 1. Plaintiffs' attorneys' hours are reasonable.

In preparing a fee request, "Counsel for the prevailing party should make a good-faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). *See* Harris Decl. at ¶ 18-24. Plaintiffs' counsel has made a good faith effort to exclude any excessive, redundant, or unnecessary hours, and these exclusions are detailed in the declaration of counsel. *Id.* at ¶ 25-26. Mr. Harris, the senior attorney representing the Plaintiffs, has substantial experience in recovery of fees under EAJA, and Courts have previously recognized his care and diligence in reviewing billable time prior to submitting a fee motion to the Court. *Rocky Mt. Wild v. Vilsack*, 2013 U.S. Dist. LEXIS 89886 *14-15 (D. Colo. June 26, 2013). In this case, Mr. Harris thoroughly reviewed all of the time sheets and, exercising his experience and judgment, removed any incomplete, inconsistent or excessive time claimed by junior attorneys and Mr. Geist.[2] *Id.* at ¶ 23-26.

---

[2] Additionally, Mr. Harris made the decision to not include any billable hours for the time expended as a result of Defendants' appeal of this Court's decision, which Defendants moved to voluntarily dismiss more than two months later. Because EAJA favors treating a case as an inclusive whole, Plaintiffs would also be entitled to fees for any hours expended

The government will likely argue that the number of attorneys, the use of a paralegal, and the total overall hours spent on this case is excessive. In this regard, it is true that the Court was able to identify and resolve the primary legal issue in this case with very little trouble. Part of the reason for this was undoubtedly that the government's position was not justified. However, credit must also go to the thoroughness of Plaintiff's efforts both on briefing the Court and at oral argument. Indeed, the hours requested by Plaintiffs' attorneys in this fee motion are particularly reasonable in light of voluminous administrative record (approximately 6,000 pages) of primarily scientific documents and data that were carefully reviewed in the preparation of this case. *Cf. Ctr. for Auto Safety v. Dole*, 595 F. Supp. 98, 103 (D.D.C. 1984) (finding attorneys' hours to be "more than reasonable" considering the complexity of issues and "voluminous administrative record" involved). Indeed, it was only through careful review of the entire content of the record, and vetting among counsel and the clients of some of the more complex material, that Plaintiffs could confidently conclude that the government could not show that the scientific evidence in the Petition that supported a positive 90-day finding was neither obsolete, wholly unreliable, or irrelevant. Harris Decl. at ¶ 27.

Finally, the hours billed by Plaintiffs' attorneys are well below those that have been found to be reasonable by other courts in this Circuit. Plaintiffs' attorneys expended a sum of 156.6 hours in 2016 (60-day notice letter and complaint), 376.65 hours in 2017 (administrative record review and dispute resolution, motion for summary judgment, reply), and 85.35 hours in 2018 (oral argument, motion for fees). These hours represent necessary and non-duplicative work and are substantially less than similar billings that

---

on the appeal, which was subsequently dismissed, preserving Plaintiffs' victory in this Court. *See Conservation Force v. Salazar*, 916 F. Supp. 2d 15, 32 (D.D.C. 2013) (finding that even if plaintiffs were required to "prevail" on appeal, they did so: the fact "that the D.C. Circuit [dismissed the appeal] in response to defendant's motion for voluntary dismissal is irrelevant") (citing *Green Aviation Mgmt. Co. v. FAA*, 676 F.3d 200, 205 (D.C. Cir. 2012)).

other courts have found to be reasonable. *See, e.g., Bennett v. Castro*, 74 F. Supp. 3d 382, 403 (D.D.C. 2014) (finding reasonable 576 hours spent on "preliminary work"); *Hernandez v. Chipotle Mexican Grill*, 257 F. Supp. 3d 100, 107-08 (D.D.C. 2017) (finding reasonable 255.8 hours spent on opposition to motion for summary judgment); *Am. Petroleum Inst. v. EPA*, 72 F.3d 907, 917 (D.C. Cir. 1996) (finding reasonable 80 hours of preparation for oral argument).

### 2. Plaintiffs' attorneys are entitled to EAJA rates with cost-of-living inflation.

Though EAJA sets a default rate cap on attorneys' fees of $125 per hour, this rate cap does not apply where "the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2112 (d)(2)(A). EAJA's "special factor" language results in applying forum rates when attorneys are qualified "in some specialized sense, rather than just in their general legal competence" and possess "distinctive knowledge or specialized skill needful for the litigation in question," and when attorneys with distinctive skills are not available at the statutory rate. *Pierce v. Underwood*, 487 U.S. 552, 572 (1988).

Here, the expertise of Plaintiffs' attorneys in wildlife law and conservation science contributed greatly to the success of this litigation.[3] However, Plaintiffs' attorneys do not

---

[3] The Supreme Court has construed the standard for enhancement as requiring "some distinctive knowledge or specialized skill needful for the litigation in question," *Pierce*, 487 U.S. at 572, and various circuits have held this to apply to the kind of "distinctive knowledge" necessary in federal environmental law proceedings. *See, e.g., Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991) (holding under EAJA that "[e]nvironmental litigation is an identifiable practice specialty that requires distinctive knowledge"); *Miccosukee Tribe of Indians v. U.S.*, No. 04-21448, 2010 WL 9034624 (S.D. Fla. Apr. 14, 2010) (approving enhancement of hourly rate for environmental expertise, finding that the attorney has "unequivocally demonstrated that he possessed a distinctive knowledge or specialized skill needful for this litigation," and concluding that the attorney's "profound understanding of esoteric scientific principles and terms regarding water quality standards . . . constitutes a 'specialized skill' as opposed to *general lawyerly knowledge* and ability useful in *all litigation*'") (citing *Pierce*, 487 U.S. at 572), *aff'd* 2012 WL 5869414 (11th Cir. Nov. 20, 2012); *Humane Soc'y of U.S. v. Bush*, 159 F. Supp. 2d 707, 712 (Fed. Cir. 2001) (ruling that

seek a rate enhancement to collect forum rates here. Instead, they only seek fees in the full statutory amount allowed by EAJA, adjusted for inflation.

Plaintiffs' attorneys claim an hourly rate that has been adjusted for inflation based on a comparison between the Urban Consumer Price Index (CPI) for the Denver Metro Area at the time the attorneys performed the legal work and the CPI as of March 1996, the date at which the $125 per hour rate specified by EAJA became effective. Numerous courts have accepted and applied this method for calculating adjustments for inflation and often use semiannual CPI averages reported by the Bureau of Labor Statistics for this purpose. *Cf. Mannino v. West*, 12 Vet. App. 242, 243 (U.S. 1999) (explaining policy of using local CPI data rather than national data); *Cal. Marine Cleaning, Inc. v. United States*, 43 Fed. Cl. 724, 734 (1999)(setting March 1996 as the proper baseline for cost of living adjustments to the $125 cap); *Brown-Mueller v. Colvin*, 2016 U.S. Dist. LEXIS 28742, at *10-11 (D. Colo. March 7, 2016) (finding the use of semiannual CPI averages to be appropriate for calculating adjusted rates); *Sanders v. Astrue*, 2011 U.S. Dist. LEXIS 150363, at *9 n.2 (W.D. Ark. Oct. 31, 2011) (explaining that the formula used to determine the yearly rate is the CPI for the year in question multiplied by $125 and divided by the CPI for March of 1996); *Gates v. Barnhart*, 325 F. Supp. 2d 1342, 1347 (M.D. Fla. 2002) (using available monthly CPI data to produce a multiplier for years in which annual CPI averages have not yet been reported); *Knudsen v. Barnhart*, 360 F. Supp. 2d 963, 971 (N.D. Iowa 2004).

Thus, the inflation-adjusted rate cap applied for work performed by Friends of Animals attorneys in the Denver Metro Area, where the CPI in March 1996 was approximately 152.0, was calculated as follows:[4]

---

expertise in trade and environmental law constitutes "special factor"); *Earth Island Inst. v. Christopher*, 942 F. Supp. 597, 612–13 (Fed. Cir. 1996) (concluding that expertise in environmental litigation constitutes a "special factor" warranting enhancement).

[4] The Bureau of Labor Statistics' archives do not contain monthly CPI data for the Denver metro area in 1996, so the average CPI for the first six months of 1996 (CPI = 152.0) was used as a proxy for the monthly CPI in March 1996. All CPI data was reported by the U.S.

|            | CPI     | Adjusted Cap |
|------------|---------|--------------|
| 2016 Average | 246.643 | $      202.83 |
| 2017 Average | 254.995 | $      209.70 |
| 2018 Half 1  | 260.790 | $      214.47 |

Harris Decl. at ¶ 35.

The inflation-adjusted rate cap for work performed by Western Watersheds Project attorneys in the Reno and Portland Metro Areas was calculated as follows using CPI data for western metro areas with populations below 2.5 million, where the CPI in March 1996 was approximately 100.0:[5]

|            | CPI     | Adjusted Cap |
|------------|---------|--------------|
| 2016 Average | 145.443 | $      181.80 |
| 2017 Average | 148.836 | $      186.05 |
| 2018 Half 1  | 152.094 | $      190.12 |

Harris Decl. at ¶ 36-37.

The following table summarizes both the rates and hours claimed so far by Plaintiffs' counsel:

---

Department of Labor Bureau of Labor Statistics and is available online at https://www.bls.gov/regions/mountain-plains/data/xg-tables/ro7xg01.htm#ro7xg01cpi.f.2.

[5] The Bureau of Labor Statistics' archives do not contain monthly CPI data for the western metro areas of Class B/C cities (populations less than 2.5 million) in 1996, so the base rate CPI 100.0, established for the region in December 1996, was used as the best available proxy for the monthly CPI in March 1996. Because the March CPI would reasonably be expected to be lower than the December CPI, this results in a conservative adjustment for inflation in the calculated cap. All CPI data was reported by the U.S. Department of Labor Bureau of Labor Statistics and is available online at https://www.bls.gov/regions/mountain-plains/data/xg-tables/ro7xg01.htm#ro7xg01cpi.f.2.

| Attorney | 2016 Hours | 2016 Rate | 2017 Hours | 2017 Rate | 2018 Hours | 2018 (Half 1) Rate | Fee |
|---|---|---|---|---|---|---|---|
| Harris | 18.6 | $ 202.83 | 53.8 | $ 209.70 | 50.85 | $ 214.47 | $   26,818.18 |
| Rasheed | 55.9 | $ 202.83 | 278.35 | $ 209.70 | 37.6 | $ 214.47 | $   77,772.26 |
| Gelfuso | 47.3 | $ 202.83 | 0 | $ 209.70 | 0 | $ 214.47 | $     9,593.86 |
| Best | 0 | $ 202.83 | 29.0 | $ 209.70 | 0 | $ 214.47 | $     6,081.30 |
| Ruprecht | 34.8 | $ 181.80 | 15.5 | $ 186.05 | 2.9 | $ 190.12 | $     9,761.76 |
| **Total** | 156.6 | | 376.65 | | 85.35 | | $ 143,464.36 |

### 3.  Plaintiffs' paralegal is entitled to market rates.

Finally, EAJA "us[es] the term 'attorney . . . fees' to reach fees for paralegal services as well as compensation for the attorneys' personal labor." *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 581 (2008). Paralegal fees are not subject to the EAJA cap, and so may be recovered at prevailing market rates. *See id.* at 590 ("[A] prevailing party that satisfies EAJA's other requirements may recover its paralegal fees from the Government at prevailing market rates."). Thus, Plaintiffs request fees for 149.3 hours of paralegal work performed by Darrell Geist in Montana at the prevailing Montana market rate of $90 per hour.[6] *See* Harris Decl. at ¶ 38. This amounts to a request of $13,437.00 in paralegal fees. When added to the $130,027.36 requested for work expended by Plaintiffs' counsel, this brings Plaintiffs' total attorneys' fees requested to $143,464.36.

---

[6] Though the D.C. Circuit has a general rule of compensating counsel based on rates paid in the community where the district court is located, an exception to this rule exists "where out-of-jurisdiction lawyers would receive substantially higher rates than they ordinarily command for work done almost exclusively in their home territory." *Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. E.P.A.*, 169 F.3d 755, 757-58, (D.C. Cir. 1999). In light of the difference in the cost of legal services between the D.C. metro area and Montana, Plaintiffs request only Montana rates for paralegal work performed there.

### 4.   Plaintiffs' degree of success does not warrant a reduction.

Where a plaintiff does not prevail on all of its claims, courts must allocate fees based on the relative degree of the plaintiff's success. *See Hensley*, 461 U.S. at 440. However, "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.* Here, Plaintiffs' claims were related and provided supporting bases for Plaintiffs' contention that FWS's analysis of the listing petitions was arbitrary and capricious and failed to appropriately analyze the petitions under the applicable regulatory standard. Each claim argued for the same relief, which was granted to Plaintiffs in the form of summary judgment and remand. Because the Court had already reached the same result argued for by all supporting claims when it ruled that FWS had applied an improperly heightened evidentiary standard, it did not need to rule on Plaintiffs' remaining supporting claims. *See Buffalo Field Campaign v. Zinke*, 289 F. Supp. 3d at 111 n.2 ("Because the Court finds that the Service applied the wrong standard based on its assessment of the Halbert et al. and White and Wallen studies, it need not address the other arguments raised by Buffalo Field, including that internal agency comments in the record additionally demonstrate that the Service applied the wrong standard."). Since these claims were related, and no decision on them was reached, it cannot be said that Plaintiffs "fail[ed] to prevail on claims that were unrelated to the claims on which [they] succeeded." *See George Hyman Const. Co. v. Brooks*, 963 F.2d 1532, 1535 (D.C. Cir. 1992). Thus, no reduction for relative degree of success is warranted here.

\\

\\

\\

13

**F.   Conclusion.**

For the foregoing reasons, Plaintiffs respectfully request that the Court order Defendants to pay $143,464.36 in attorneys' fees to date to Friends of Animals, as specified in the proposed order submitted herewith.[7]


Dated:  July 27, 2018                                        Respectfully Submitted,


                                                             /s/ Michael Harris
                                                             Michael Ray Harris
                                                             Director, Wildlife Law Program
                                                             Friends of Animals
                                                             7500 E. Arapahoe Road, Suite 385
                                                             Centennial, Colorado 80112
                                                             michaelharris@friendsofanimals.org
                                                             720-949-7791

                                                             *Attorney for Plaintiffs*

---

[7] This Motion seeks recovery of all attorneys' fees incurred by Plaintiffs up to the date of the filing of this Motion. Plaintiffs reserve the right to request additional fees incurred if a reply in support of this Motion becomes necessary.